UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

PORTLAND PIPE LINE         )
CORPORATION, et al.,       )
                           )
         Plaintiffs,       )
                           )
    v.                     )    2:15-cv-00054-JAW
                           )
CITY OF SOUTH PORTLAND,    )
et al.,                    )
                           )
         Defendants.       )

**INTERIM ORDER**

The Court orders further proceedings under Federal Rule of Civil Procedure 12(b)(1) to resolve whether the Court has subject matter jurisdiction.

**I.    BACKGROUND**

On February 6, 2015, Portland Pipe Line Corporation (PPLC) and the American Waterways Operators (AWO) (collectively, Plaintiffs) filed a nine-count complaint in this Court, challenging the constitutionality of a municipal ordinance that prohibits the "bulk loading" of crude oil onto marine vessels in the harbor of South Portland, Maine. *Compl. for Declaratory and Injunctive Relief* (ECF No. 1) (*Compl.*). PPLC owns and operates the United States portion of a transportation system that includes 12-inch diameter, 18-inch diameter, and 24-inch diameter pipelines and associated facilities extending from South Portland, Maine to Montreal, Quebec. *Id.* ¶ 11. At the time of the filing of the Complaint in February 2015, approximately forty-eight ships offloaded at South Portland annually, and PPL

transported crude oil to Quebec via pipeline at a rate of approximately 2.4 million barrels of oil per month. *Id.* The practical effect of the Ordinance is to prevent PPLC from reversing the flow of its existing pipeline infrastructure to transport oil south from Montreal, Quebec, to vessels in the South Portland harbor.

On March 31, 2015, the city of South Portland and its code enforcement officer (collectively, Defendants) filed a motion to dismiss for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1), arguing, *inter alia*, that the Plaintiffs' claims are unripe and that the Plaintiffs lack standing. *Defs.' Mot. to Dismiss the Compl. Pursuant to Rule 12(b)(1)* (ECF No. 16); *Mem. of Law in Supp. of Defs.' Mot. to Dismiss Pursuant to Rule 12(b)(1)* (ECF No. 17). Specifically, the Defendants argued that the Plaintiffs have no concrete plan to reverse the flow of oil and thereby violate the Ordinance, that the present effect of the Ordinance on the Plaintiffs consists of a "threadbare claim of economic uncertainty," and that the Plaintiffs' claims rest on a "chain of contingencies, including whether PPLC ever decides to bulk load crude oil in the City and whether it initiates a process for federal, state and local approvals that may conflict with the Ordinance." *Id.* at 11–18.

On February 11, 2016, the Court issued an order denying the Defendants' Motion to Dismiss. *Order on Defs.' Mot. to Dismiss* (ECF No. 29). Viewing the facts in the light most favorable to the Plaintiffs, the Court concluded that "but for the Ordinance, PPLC would commence plans to reverse the flow of crude oil and would begin marketing that oil." *Id.* at 38–38. However, the Court cautioned that "it

remains to be seen whether PPLC will amass a set of facts sufficient for the Court to make its legal determinations [regarding justiciability] . . . ." *Id.* at 40.

Subsequent to the Court's Order, the parties engaged in discovery, and on November 17, 2016, the parties filed cross motions for summary judgment with supporting statements of material facts. *Pls.' Mot. for Summ. J.* (ECF No. 87); *Pls.' Statement of Material Facts* (ECF No. 89); *Defs.' Consolidated Mot. to Dismiss Pursuant to Rule 12(b)(1) and Mot. for Summ J.* (ECF No. 88) (*Defs.' Mot.*); *Defs.' Rule 12(b)(1) and Loc. R. 56(b) Statement of Undisputed Material Facts [Redacted Verion]* (ECF No. 95). As part of their motion for summary judgment, the Defendants also renewed their motion to dismiss for lack of subject matter jurisdiction pursuant to Rule 12(b)(1). *Defs.' Mot.* at 2–3. In their motion, the Defendants contend:

> Now that discovery is complete, it is plain that the [Defendants'] initial arguments were correct and that, in denying the [Defendants'] initial motion, the Court was misled by statements and arguments by the Plaintiffs that are demonstrably untrue. Specifically, contrary to Plaintiffs' representations, PPLC has no current plans to reverse the flow of oil in its pipeline . . . , did not receive all of the permits necessary to reverse the flow . . . and, in fact, has full knowledge that there is not sufficient volume of crude oil available in the existing west-to-east pipeline network [which would supply PPLC] to make its project viable. . . . Thus, the [Defendants] renew[] [their] motion to dismiss based upon ripeness and standing.

*Id.*

## II. FACIAL VERSUS FACTUAL RULE 12(b)(1) CHALLENGES

Under Rule 12(b)(1), a court must dismiss a case over which it lacks subject matter jurisdiction. FED. R. CIV. P. 12(b)(1), (h)(2). Rule 12(b)(1) is a "large umbrella, overspreading a variety of different types of challenges to subject-matter

3

jurisdiction," including ripeness and standing. *Valentin v. Hosp. Bella Vista*, 254 F.3d 358, 362–63 (ripeness); *see Blum v. Holder*, 744 F.3d 790, 795–96 (1st Cir. 2014) (standing). The plaintiff, as the party asserting subject matter jurisdiction, has the burden of demonstrating its existence. *Aversa v. United States*, 99 F.3d 1200, 1209 (1st Cir. 1996).

The First Circuit has established two ways to challenge a court's subject matter jurisdiction under Rule 12(b)(1): facial challenges and factual challenges. In a facial challenge, the defendant "accepts the plaintiff's version of the jurisdictionally-significant facts as true and addresses their sufficiency, thus requiring the court to assess whether the plaintiff has propounded an adequate basis for subject matter jurisdiction." *Id.* at 363. In performing this task, the court must proceed as it would under Rule 12(b)(6), accepting the well-pleaded facts contained in the complaint as true and drawing all reasonable inferences in favor of the plaintiff. *Id.*

When mounting a factual challenge, by contrast, the defendant controverts "the accuracy (rather than the sufficiency) of the jurisdictional facts asserted by the plaintiff and proffer[s] materials of evidentiary quality in support of that position." *Id.* Faced with a factual challenge, the court must first "determine whether the relevant facts, which would determine the court's jurisdiction, also implicate the elements of the plaintiff's cause of action." *Torres-Negron v. J&N Records, LLC*, 504 F.3d 151, 163 (1st Cir. 2007). If the court determines that the disputed jurisdictional facts are intertwined with the merits of the case, then "the district court should

4

employ the standard applicable to a motion for summary judgment." *Id.* (quoting *Autery v. United States*, 424 F.3d 944, 956 (9th Cir. 2005)).

If, however, the court determines that the contested jurisdictional facts are not intertwined with the elements of the plaintiff's cause of action, then the court "must address the merits of the jurisdictional claim by resolving the factual disputes between the parties." *Valentin*, 254 F.3d at 363. This is because "at issue in a factual 12(b)(1) motion is the trial court's jurisdiction—its very power to hear the case . . . ." *Torres-Negron*, 504 F.3d at 163 (quoting *Lawrence v. Dunbar*, 919 F.2d 1525, 1529 (11th Cir. 1990)); *see also Valentin*, 254 F.3d at 364 ("A court's authority to hear a particular case is a necessary precondition to the proper performance of the judicial function"). When resolving the factual disputes, the court "may proceed as it never could under [Rule 12(b)(6) or Rule 56]." *Torres-Negron*, 504 F.3d at 163 (alteration added). The plaintiff's factual allegations are entitled to no presumptive weight; rather, the court is free to weigh the evidence and "enjoys broad authority to order discovery, consider extrinsic evidence, and hold evidentiary hearings in order to determine its own jurisdiction." *Valentin*, 254 F.3d at 363; *see also Hernandez-Santiago v. Ecolab, Inc.*, 397 F.3d 30, 33 (1st Cir. 2005); *Nulankeyutmonen Nkihtaqmikon*, 462 F. Supp. 2d. 86, 90 (D. Me. 2006) (internal quotations marks and citation omitted), *rev'd on other grounds* 503 F.3d 18 (1st Cir. 2007); 2 JAMES WM. MOORE, MOORE'S FEDERAL PRACTICE § 12.30[4] (3d ed. 2016) ("Because a factual Rule 12(b)(1) motion involves the court's very power to hear the case, the Court may weigh the evidence to confirm its jurisdiction. No presumptive truthfulness attaches to

plaintiff's allegations, and the existence of disputed material facts does not preclude the trial court from evaluating for itself the merits of the jurisdictional claim").

## III. THE DEFENDANTS' FACTUAL RULE 12(b)(1) CHALLENGE

In this case, the Defendants label their present Rule 12(b)(1) motion as a "factual challenge."[1] *Defs.' Mot.* at 10 (citing *Valentin*, 254 F.3d at 362–65). The Plaintiffs do not appear to disagree with this designation; rather, they argue that the Defendants should not be entitled to a second bite at the Rule 12(b)(1) apple, especially because the Defendants could have requested the evidentiary record two years ago when it filed its first motion. *Pls.' Mem. in Opp'n to Defs.' Mot. to Dismiss and for Summ. J.* at 2 (ECF No. 127) (*Pls.' Opp'n*). The Court agrees with the

---

[1] In *Valentin v. Hospital Bella Vista*, 254 F.3d 358 (1st Cir. 2001), the First Circuit discussed in great detail the distinction between facial and factual Rule 12(b)(1) challenges. In *Valentin*, the defendant challenged the plaintiff's factual allegations relating to the existence of diversity jurisdiction. Notably, the First Circuit stated that because challenges to ripeness present a "pure (or nearly pure) question[] of law," it was beyond the scope of the Court's opinion. *Id.* at 363. Hence, it is possible to read *Valentin* as suggesting that a defendant may not bring a factual Rule 12(b)(1) challenge to contest ripeness.

However, this Court does not read *Valentin* in such limited terms. In this case, there is a significant dispute regarding the facts underlying the Court's ripeness determination. The Court must resolve that dispute in order to establish its authority to hear the case. Thus, as the First Circuit reasoned in *Valentin*, "when a factbound jurisdictional question looms, a court must be allowed considerable leeway in weighing the proof, drawing reasonable inferences, and satisfying itself that subject-matter jurisdiction has attached." *Id.* at 364. This is especially the case here, where the Plaintiff's cause of action involves important constitutional questions. *See Ernst & Young v. Depositors Economic Protection Corp.*, 45 F.3d 530, 538 (1st Cir. 1995) ("Courts should strive to avoid gratuitous journeys through forbidding constitutional terrain"). The Court therefore concludes that, at least in the context of this case, the Defendant may raise a factual Rule 12(b)(1) challenge to contest the ripeness of the Plaintiffs' claims. *See also Al-Owhali v. Ashcroft*, 279 F. Supp. 2d 13, 20 (D.D.C. 2003) (challenges regarding ripeness or failure to exhaust administrative remedies can be either facial or factual challenges); *Hearns Concrete Const. Co. v. City of Ypsilanti*, 241 F. Supp. 2d 803, 810 (E.D. Mich. 2003).

6

Plaintiffs that it would have been better practice for the Defendants to request preliminary jurisdictional discovery earlier in the case.[2]

However, the Defendants cannot waive subject matter jurisdiction—as the Plaintiffs seem to suggest. The First Circuit has written that "lack of subject matter jurisdiction can be noticed at any time and cannot be waived." *Plumbers' Union Local No. 12 Pension Fund v. Nomura Asset Acceptance Corp.*, 632 F.3d 762, 767 (1st Cir. 2011); *see also Mach. Project, Inc. v. Pan Am. World Airways, Inc.*, 199 F. Supp. 3d 382, 386 (D. Mass. 2016) (citing *Aversa v. United States*, 99. F.3d 1200, 1209 (1st Cir. 1996)) (holding that a challenge to the existence of federal subject matter jurisdiction "may be raised at any point during the litigation pursuant to Fed. R. Civ. P. 12(b)(1)"). This is because, as noted earlier, "[a] court's authority to hear a particular case is a necessary precondition of the proper performance of the judicial function." *Valentin*, 254 F.3d at 363; *see also* FED. R. CIV. P. 12(h)(3) ("If the court determines at any time that it lacks subject matter jurisdiction, the court must dismiss the action"). Indeed, on April 27, 2017, the Court of Appeals for the First Circuit affirmed the dismissal of a case based on a lack of subject matter jurisdiction, even though the case had gone all the way to verdict and was on appeal before the jurisdictional flaw was recognized. *Hearts with Haiti, Inc. v. Kendrick*, Nos. 15-2401, 16-1839, 2017 U.S. App. LEXIS 7622 (1st Cir. Apr. 27, 2017). Consequently, the Court must address the

---

[2] As a practical matter, the Court cannot know—nor does it matter—how much of a difference isolating and resolving the jurisdictional issue first would have made, because the parties would have had to engage in extensive discovery in any event. No doubt there would have been some efficiency gained from trimming the issues subject to discovery and briefing. But exactly how much is conjecture, and the Court must deal with the case presented, not as it might have been.

jurisdictional issues that the Defendants raise in their factual Rule 12(b)(1) challenge before proceeding to the merits of the case.

In addressing the Defendants' factual Rule 12(b)(1) challenge, the Court first notes that the contested jurisdictional facts are not intertwined with the merits of the Plaintiff's case. In the Court's view, whether PPLC has both the capacity and a sufficiently immediate plan to violate the Ordinance is not intertwined with the ultimate constitutionality of the challenged law. To this point, each of the other substantive legal issues assumes that PPLC will proceed with its proposal to reverse the flow of oil; otherwise, the Court would be issuing a constitutionally-prohibited advisory opinion on the legality of a project that might never happen. *See Abbott Labs. v. Gardner*, 387 U.S. 136, 148 (1967) (the prohibition against advisory opinions prevents "the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements"); *Mangual v. Rotger-Sabat*, 317 F.3d 45, 59 (1st Cir. 2003). Accordingly, it is the Court's obligation to weigh the competing jurisdictional facts—affording neither party a presumption of truthfulness—to determine whether the Plaintiffs have met their burden of proving that they have standing and that their claims are ripe.

The Court has scrutinized the copious filings in this case and has identified some examples of facts in contention that the Court is uncomfortable resolving based on the current state of the record.[3] For instance, after comparing the parties' cross

---

[3] The analytic contrast is with the pending motions for summary judgment, where the Court must view contested facts in the light most favorable to the non-movant. *See Gillen v. Fallon Ambulance Serv., Inc.*, 283 F.3d 11, 17 (1st Cir. 2002).

Furthermore, in highlighting some disputed facts, the Court is not proposing an exclusive list.

8

statements of facts, the Court is unclear on the extent to which PPLC's marketing efforts depend on crude oil flowing from west to east on the reversed Enbridge Line 9 system; whether the oil flowing west to east on the Enbridge Line 9 system is already committed to other refineries; the ramifications of the take-or-pay contracts between Enbridge Pipelines, Inc., and Suncor and Valero Jean Gaulin Refineries near Montreal, Quebec; the precise reasons for PPLC's inability to move forward with a reversal project in 2011, 2012, or 2013; the extent to which a current plan to reverse the flow of the pipelines would differ from the 2008 proposal; and what steps PPLC has taken to analyze the demand for a flow reversal since publishing an open letter to the citizens of South Portland in 2013, in which it wrote:

> Let us be clear—there is no such project [to reverse the flow of the pipelines to South Portland] proposed, pending, or imminent. In fact, recently, as a good faith measure, we took the rare step of voluntarily surrendering our final permit relating to that prior proposal, as further reassurance to the community we care so deeply about that there is no tar sands project.

*Third Decl. of Jesse Harlan Alderman, Esq., in Supp. of Defs.' Opp'n to Pls.' Mot. for Summ. J.*, Attach. 2, *An Open Letter to the Residents of South Portland* (ECF No. 125).

Moreover, the Court is uncomfortable with the underpinnings for opinion evidence of Sarah Emerson in its present state. *Decl. of Sarah Emerson* (ECF No. 91); *Defs.' Loc. R. 56(d) Resp. to Pls.' Additional Statement of Facts*, Attach. 3, *Second Decl. of Sarah Emerson* (ECF No. 143) (*Second Emerson Decl.*). Sarah Emerson, an oil industry expert, questioned whether there currently is sufficient pipeline capacity carrying crude oil to allow PPLC to reverse the flow of its pipelines and load crude oil

9

onto ships in South Portland. *Second Emerson Decl.* ¶ 12. Relying on Ms. Emerson's expert opinions, the Defendants contend that "PPLC cannot show that there is sufficient crude oil available to make the project viable." *Defs.' Mot.* at 3.

The Plaintiffs argue that the Defendants cannot rely on the expert testimony of Ms. Emerson to introduce facts of which Ms. Emerson lacks personal knowledge.[4] *Pls.' Loc. R. 56(c) Opposing Statement of Material Facts and Additional Statement of Facts* ¶ 10 (ECF No. 128). Ms. Emerson herself acknowledged that she is basing her opinions not only on her own personal knowledge but also on "facts and data that I have been made aware of, personally observed, that are publicly available, and that professionals in my field routinely rely on to reach opinions." *Second Emerson Decl.* ¶ 4. The First Circuit has explained that Federal Rule of Evidence 703 contemplates that "the trial judge act as an independent 'gatekeeper' to ensure that there is sufficient, credible evidence that experts do rely on the specified types of sources in formulating their opinions." *United States v. Corey*, 207 F.3d 84, 89 (1st Cir. 2000).

That said, Ms. Emerson's testimony raises substantial questions about the practical ability of the Plaintiffs to move forward with a plan to reverse the flow of their pipelines.[5] Disputes regarding expert testimony and personal knowledge are

---

[4] The Plaintiffs' resort to Rule 56(c) is appropriate for a motion for summary judgment, not a jurisdictional hearing. But their overall point—namely, that the Court should perform a gatekeeping function to make sure Ms. Emerson is basing her expert opinions on reliable facts—is equally applicable to a jurisdictional hearing.

[5] It is important to note that the Court is not charged with determining whether it makes "business sense" for PPLC to proceed with its reversal project. Rather, the Court must satisfy itself that there is a case or controversy in this matter, which requires the Court to find that "the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of the judicial relief sought." *Labor Relations Division of Construction Industries of Massachusetts, Inc. v.*

10

often difficult to resolve on a truncated record. *See Cortes-Irizarry v. Corporacion Insular De Seguros*, 111 F.3d 184, 188 (1st Cir. 1997). Consequently, the Court is hesitant to rule definitively on the admissibility of Ms. Emerson's testimony, especially when her testimony raises significant questions relating to the Court's jurisdiction.

Given the weighty constitutional issues looming in this case, it is imperative for the Court to make certain that it has jurisdiction and to weigh and resolve the factual disputes regarding the Court's jurisdiction. As the Court's examples suggest, the parties' cross statements of facts leave the Court with substantial uncertainty and preclude it from undertaking the careful factual weighing that this case deserves. Consequently, the Court seeks additional assistance from the parties to clarify the factual jurisdictional disputes and to provide materials of evidentiary quality to assist the Court's determination.

Therefore, the Court ORDERS that the Plaintiffs' Motion for Summary Judgment (ECF No. 87), and the Defendants' Consolidated Motion to Dismiss Pursuant to Rule 12(b)(1) and Motion for Summary Judgment (ECF No. 88) be held

---

*Healey*, 844 F.3d 318, 326 (1st Cir. 2016). Here, it could be that even if Ms. Emerson is correct, PPLC has an alternative explanation for why it is going forward with the reversal project.

Even so, based on what the Court now knows, if the Defendants prove, for instance, that there is simply no oil to supply the reversal project, or that PPLC itself acknowledged that it would not move forward with the project due to market forces, then the Court would have serious reservations about the Plaintiffs' assertion that the Ordinance subjects them to immediate harm. *Compl.* ¶ 63. At the same time, it seems unfair to reach this conclusion based on evidence that PPLC contests, without giving PPLC a better opportunity to challenge the facts underlying the expert opinion that could defeat its case, and to give the Defendants an equal opportunity to prove their point. The Court is reluctant to rule either way based on the contents of a contested sworn declaration.

in abeyance.  The Court will schedule a telephone conference to be held at the mutual convenience of the Court and counsel to determine the next steps.

SO ORDERED.

/s/ John A. Woodcock, Jr.
JOHN A. WOODCOCK, JR.
UNITED STATES DISTRICT JUDGE

Dated this 11th day of May, 2017