UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

PORTLAND PIPE LINE                )
CORPORATION, et al.,              )
                                  )
            Plaintiffs,           )
                                  )
      v.                          )        2:15-cv-00054-JAW
                                  )
CITY OF SOUTH PORTLAND,           )
et al.,                           )
                                  )
            Defendants.           )

**ORDER**

In connection with their motion for summary judgment, the City of South Portland and its code enforcement officer (Defendants) seek to file a document that Portland Pipe Line Corporation (PPLC) and the American Waterways Operators (AWO) (collectively, Plaintiffs) contend is an attorney-client communication and attorney work product. The Defendants move the Court to conduct an in-camera review of the document to determine if it enjoys privileged or protected status. Upon review, the Court concludes that the document is neither privileged nor protected.

I.    **BACKGROUND**

      A.    **The Document in Dispute**

      The parties' filings indicate that on December 29, 2016, PPLC filed an application for abatement of property taxes pursuant to 36 M.R.S. § 841. *Pls.' Mot. for Leave to File Pleading Under Seal*, Attach. 3, *Application for Abatement of Property Taxes* at 2 (ECF No. 144). In the application, PPLC asserted that the City

of South Portland's assessment of the value of PPLC's property was "manifestly wrong" and "substantially overvalued." *Id.* at 3. In support of the tax abatement application, PPLC and its attorneys at Pierce Atwood, LLP, jointly engaged a real estate appraiser named Darrell R. Lloyd, Jr. of IREM Solutions to appraise PPLC's assets and to prepare an appraisal report. *Pls.' Mot. for Leave to File Pleading Under Seal*, Attach. 1, *Pls.' Mem. in Opp'n to Defs.' Mot. for Leave to File Document in Connection with Mot. for Summ. J. for Which Privilege is Disputed* at 1–3 (ECF No. 144) (*Pls.' Opp'n*); *Defs.' Mot. for Leave to File Pleading Under Seal*, Attach. 3, *Restricted Appraisal Rep.* (ECF No. 133) (*Appraisal Report*). On May 20, 2016, Mr. Lloyd sent a draft of his appraisal report to PPLC. *Pls.' Mot. for Leave to File Pleading Under Seal*, Attach. 2, *May 20, 2016 Email* at 2–3 (ECF No. 144). The pleadings suggest that PPLC then sent the draft report to Pierce Atwood for review. *See Pls.' Opp'n* at 5–6.

The document in dispute (Document) is a two-page excerpt from a draft of Mr. Lloyd's report. *See Defs.' Mot. for Leave to File Pleading Under Seal*, Attach. 2 at 1–2 (ECF No. 133) (*Document*). The Document contains Mr. Lloyd's original text, as well as edits that Pierce Atwood attorneys made to the text using a word processor's "track changes" editing tool. *Document* at 1–2; *Defs.' Mot. for Leave to File Pleading Under Seal*, Attach. 1, *Defs.' Mot. for Leave to File Document in Connection with Mot. for Summ. J. for Which Privilege is Disputed* at 2–3 (ECF No. 133) (*Defs.' Mot.*); *Pls.' Opp'n* at 2–3. The edits include formatting changes, in-line insertions and deletions, and one comment in the margin. *Document* at 1–2; *Pls.' Opp'n* at 2–3.

In the original text of the Document, Mr. Lloyd noted that, given potential competition from oil shipped via tankers from Montreal and the anticipated TransCanada pipeline from Alberta to St. John, PPLC's pipeline could "best be classified as a distressed asset.  It is possible the line could go idle or possibly be repurposed." *Document* at 2.  The Document shows that upon review of Mr. Lloyd's proposed language, a Pierce Atwood attorney crossed out the words "or possibly be repurposed."  *Id.*  Elsewhere in the Document, Mr. Lloyd wrote, "[c]onsidering the level of environmental opposition it is unlikely, even if [the Plaintiffs] win the [pending federal] lawsuit, that the Portland-Montreal Pipeline will be reversed."  *Id.* A Pierce Atwood attorney crossed out this statement in its entirety and added a comment in the margin:

> **Comment [MM1]:** The City is arguing that even if the ordinance goes away, we won't be able to get our other approvals, so the matter isn't ripe.  They might cite this text to support that argument.  I think [Mr. Lloyd] should just leave out any guessing as to what the future may hold for this—the law today is the law that applies to this appraisal.  If the court overturns the law, the appraiser then can consider whether reversal is likely, and how quickly.

*Id.* at 2.  The Document contains various other grammatical and minor edits to the language of Mr. Lloyd' draft.  *Id.* at 1–2.

On May 25, 2016, PPLC emailed Mr. Lloyd and attached the proposed changes to the draft report.  *Pls.' Mot. for Leave to File Pleading Under Seal*, Attach. 2, *May 25, 2016 Email* at 1 (ECF No. 144) (*May 25, 2016 Email*); *Pls.' Opp'n* at 6.  In the email, the PPLC representative wrote, "As you know, we are currently in a federal lawsuit with the City of South Portland.  As such, we need to be extremely careful

what we say in the public domain regarding our business and the effect the South Portland Clear Skies Ordinance is having on our business." *May 25, 2016 Email* at 1. On June 3, 2016, PPLC submitted the finalized Restricted Appraisal Report (Report) to the Assessor's Office of the City of Portland as part of its tax abatement application. *Appraisal Report* at 1–2. The Report incorporated the edits that the Pierce Atwood attorneys proposed in the Document. *Id.* at 6–8.

### B. Discovery and Subsequent Procedural History

The Plaintiffs produced the Document to the Defendants as part of their "e-discovery" submission on July 26, 2016. *Defs.' Mot.* at 2. The Plaintiffs designated the Document as "Document PPLCAWO-0077728" and marked the Document as "confidential" pursuant to the Confidentiality Order that the Court entered on June 27, 2016. *Document* at 1–2; *Pls.' Opp'n* at 1, n.1. On August 2, 2016, the Plaintiffs sent the Defendants a list of documents that the Plaintiffs claimed were inadvertently produced or required additional privilege redactions. *Defs.' Mot.* at 2; *Defs.' Mot. for Leave to File Pleading Under Seal*, Attach. 4, *August 2, 2016 Email* at 1–5. The list did not include the Document. *Id.*

On December 19, 2016, in accordance with the Confidentiality Order, the Defendants notified the Plaintiffs of their intent to use the Document in connection with their Opposition to the Plaintiffs' Motion for Summary Judgment. *Defs.' Mot.* at 2. The Plaintiffs then asserted a claim of privilege and work product over the Document. *Id.*

On December 30, 2016, the Defendants filed a motion for leave to file the Document.[1] *Defs.' Mot.* The Plaintiffs responded on January 20, 2017, *Pls.' Opp'n*, and on February 10, 2017, the Defendants replied.[2] *Defs.' Mot. for Leave to File Reply Mem. Under Seal*, Attach. 1, *Defs.' Reply Mem. in Resp. to Pls.' Opp'n to Defs.' Mot. for Leave to File Document* (ECF No. 150) (*Defs.' Reply*).

## II. PARTIES' POSITIONS

### A. The Defendants' Motion

#### 1. Attorney-Client Privilege

The Defendants explain that the attorney-client privilege protects confidential communications between a lawyer and a client made for the purpose of seeking or

---

[1]      The Plaintiffs contend that "Defendants' motion clearly challenges Plaintiffs' claim of privilege concerning the Document and therefore necessarily concerns discovery." *Pls.' Opp'n* at 1, n.1. The Plaintiffs assert that the Court should deny the Defendants' motion because the Defendants never conferred with the Plaintiffs about the discovery dispute and because the Defendants never sought permission from the Court to file their motion, as required by District of Maine Local Rule 26(b). *Id.*

         The Court disagrees with the Plaintiffs' characterization of this matter as a discovery dispute for purposes of Local Rule 26(b). Discovery ended in this matter on September 2, 2016. *Rep. of Hr'g and Order Re: Pls.' Mot. to Enlarge Deadlines* at 2 (ECF No. 70). The Plaintiffs did not attempt to "claw back" the Document during discovery, nor did they assert a claim of privilege or work product over the Document until December 19, 2016, a month after both parties had filed cross-motions for summary judgment in the case. *Defs.' Mot.* at 2. "Evidentiary disputes that arise after discovery has closed, particularly after a motion for summary judgment has been filed, are not properly characterized as discovery disputes" for purposes of the local rule. *See 165 Park Row, Inc. v. JHR Dev.*, No. 2:12-cv-106-NT, 2013 U.S. Dist. LEXIS 22715, at *4 (D. Me. Feb. 20, 2013). The Defendants' failure to abide by the requirements of Local Rule 26(b) is not cause to deny their motion.

[2]      Both parties move to file their pleadings and attached exhibits under seal. In their motion to seal, the Defendants explain that "Defendants and Plaintiffs have not reached agreement as to the requested sealing of [the Document], although Defendants presume Plaintiffs prefer [the Document] be sealed until the Court rules on Defendants' motion." *Defs.' Mot. for Leave to File Pleading Under Seal* at 1 (ECF No. 133). The Plaintiffs "agree that it was appropriate for Defendants' motion and its appended exhibits to be filed under seal" and "now request that their opposition to Defendants' motion, and the exhibits appended to it, be filed under seal as well." *Pls.' Mot. for Leave to File Pleading Under Seal* at 1 (ECF No. 144). The parties' motions to seal accord with the procedure set forth in Federal Rule of Civil Procedure 26(b), in which a party disputing a claim of privilege may "present the information to the court under seal for a determination of the claim." FED. R. CIV. P. 26(b)(5)(B). Therefore, the Court grants the Defendants' Motion for Leave to File Pleading Under Seal (ECF No. 133), the Plaintiffs' Motion for Leave to File Pleading Under Seal (ECF No. 144), and the Defendants' Motion for Leave to File Reply Memorandum Under Seal (ECF No. 150).

giving legal advice. *Defs.' Mot.* at 4–5 (citing *XYZ Corp. v. United States (In re Keeper of the Records)*, 348 F.3d 16, 22 (1st Cir. 2003)). They assert that the attorney-client privilege does not protect the Document for three reasons. First, they contend that the Document is not a communication between the lawyer and the client because Mr. Lloyd, a third-party real estate appraiser, drafted the Document. *Id.* at 4. Next, they argue that the Document was not made for the purpose of seeking or giving legal advice; rather, the Document "was prepared to support a request for a municipal tax abatement." *Id.* at 5. Finally, the Defendants allege that the Document is not confidential due to Mr. Lloyd's involvement in the purported attorney-client communication. *Id.* at 5. Moreover, the Defendants maintain that the limited exception to confidentiality for necessary third-party consultants is inapplicable. *Id.* at 5–6.

### 2. Work Product

The Defendants also claim that the work product doctrine does not protect the Document because the Document was not created by an attorney or consultant in anticipation of this, or any other, litigation. *Id.* at 6–7 (citing *United States v. Textron, Inc.*, 577 F.3d 21, 29–30 (1st Cir. 2009); *In re San Juan Dupont Plaza Hotel Fire Litig.*, 859 F.2d 1007, 1014 (1st Cir. 1988)). Further, the Defendants contend that even if the Document is work product, the Court should permit the Defendants to use the Document under Federal Rule of Civil Procedure 26(b)(3), which allows for discovery of otherwise undiscoverable information if a party "shows that it has a substantial need for the materials to prepare its case and cannot, without undue hardship, obtain

their substantial equivalent by other means." *Id.* at 7 (citing FED. R. CIV. P. 26(b)(3)). The Defendants argue that they have a substantial need for the Document because it speaks to the "*actual* intent" of PPLC and its plans for the pipeline. *Id.* According to the Defendants, the Document confirms that the Plaintiffs' representations concerning the ripeness of the controversy are disingenuous. *Id.* Moreover, the Defendants assert that they cannot, "without divining the inner thought processes of PPLC management, obtain this information from any other source." *Id.* Thus, the Defendants urge the Court to allow them to file the Document notwithstanding the work product doctrine.

### 3. Waiver

Finally, the Defendants allege that the Plaintiffs waived any claim to protection or privilege by failing to take reasonable measures to protect the Document and by failing to take reasonable steps to rectify the disclosure after they produced the Document. *Id.* at 8 (citing FED. R. CIV. P. 502(b)). The Defendants point out that only when the Defendants brought the Document to the Plaintiffs' attention did the Plaintiffs' claim protected status, and therefore, the Plaintiffs have waived any claimed privilege. *Id.*

### B. The Plaintiffs' Response

### 1. Attorney-Client Privilege

The Plaintiffs contend that the Defendants' motion "rests on a series of misapprehensions concerning the nature of the Document, and PPLC's current and intended use of it." *Pls.' Mot.* at 2. The Plaintiffs explain that a Pierce Atwood staff

person technically created the Document[3] and that, although Mr. Lloyd drafted the Document's original text, Pierce Atwood attorneys were responsible for the comment and the other in-line edits. *Id.* at 2–3. Furthermore, the Plaintiffs allege that PPLC and Pierce Atwood jointly engaged Mr. Lloyd as an expert to prepare the appraisal reports in anticipation of what the Plaintiffs describe as "property tax litigation." *Id.* at 3.

The Plaintiffs assert that, based on this proper understanding, the Document is protected under the attorney-client privilege. *Id.* at 5–6. They argue that "counsel for PPLC created the Document and included within it revisions and comments for the specific purpose of providing PPLC with legal advice relevant to both the ongoing litigation over the Ordinance and the then-anticipated (now-commenced) property tax litigation against the city." *Id.* Additionally, they point out that the Pierce Atwood attorneys then sent the Document directly to PPLC. *Id.* at 6. Consequently, the Plaintiffs contend that the Document qualifies as an attorney-client communication entitled to privileged status. *Id.*

### 2. Work Product

The Plaintiffs also assert that the Document is entitled to attorney work product protection. According to the Plaintiffs, "the Federal Rules of Civil Procedure make clear that communications between a party and its retained expert, 'regardless of the form of the communications,' are work-product protected from discovery." *Id.*

---

[3]     The Court presumes that the Plaintiffs mean that a Pierce Atwood staff person "created" the Document by copying the text of Mr. Lloyd's draft report into a word processing document for editing. The Court adopts this understanding for purposes of the following analysis.

at 4 (citing FED. R. CIV. P. 26(b)(4)(C)).  The Plaintiffs claim that "[t]he penumbra of this protection clearly extends to a draft expert report, such as is reflected in the Document." *Id.* at 4.  Further, the Plaintiffs explain that procedural rules governing property tax litigation incorporate the work product doctrine and that work product protection carries over from one suit to another. *Id.* at 5 (citing 94-391 C.M.R. ch. 4, § 4(F)(9); *Planalto v. Ohio Cas. Ins. Co.*, 256 F.R.D. 16, 19 (D. Me. 2009)).  Therefore, the Plaintiffs argue that the Document qualifies as work product "whether characterized as created for the pending property tax litigation or as created for this litigation." *Id.*

Moreover, the Plaintiffs allege that the Defendants cannot demonstrate that they have a "substantial need" for the Document under Rule 26(b)(3). *Id.* at 7.  As an initial matter, they point out that the Rule shields from discovery any documents containing "the mental impressions, conclusions, opinions, or legal theories of a party's attorney or other representative concerning the litigation," and therefore, the attorney comments on the Document are not discoverable. *Id.* at 6.  The Plaintiffs also contend that Mr. Lloyd's analysis in the Document "says little if anything about PPLC's 'actual intent' and 'plans for the pipeline.'" *Id.* at 7.  Relatedly, the Plaintiffs emphasize that the Defendants had ample opportunity during the two full-day depositions of PPLC representatives to attempt to discover the information contained in the Document. *Id.*  Thus, the Plaintiffs contend that the Document's actual probative value is "minimal at best, and certainly not sufficient to outweigh the work product and attorney-client privilege concerns raised by Plaintiffs." *Id.*

### 3. Waiver

Finally, the Plaintiffs dispute that they waived privilege by failing to reasonably protect the Document. *Id.* at 8–9. The Plaintiffs insist that they took "ample measures" to protect the Document from disclosure. *Id.* at 8. They emphasize that they produced over 100,000 pages of documents to the Defendants and that the Document is the only inadvertent disclosure that the Defendants seek to use. *Id.* at 9. The Plaintiffs also explain they did not seek to "claw back" the Document until December 2016 because that was the first time they learned that they had mistakenly released it. *Id.* Accordingly, the Plaintiffs argue that they have not waived privilege.

## C. The Defendants' Reply

In reply, the Defendants clarify that they are "only offering for consideration the actual draft text of the appraiser's report [contained in the Document] . . . not the attorney's edits, which are nonetheless not privileged or entitled to work product protection." *Defs.' Reply* at 2. The Defendants also dispute the Plaintiffs' characterization of the tax abatement application process as "property tax litigation." *Id.* The Defendants assert that, "[a]s a matter of law, any tax abatement application is not litigation for the purposes of the work product doctrine . . . ." *Id.* at 2–4 (citing *Nevada v. United States Dep't of Energy*, 517 F. Supp. 2d 1245, 1247 (D. Nev. 2007)). The Defendants also point out that the tax abatement process in Maine lacks the hallmarks of an adversarial litigation. *Id.* at 4.

Further, the Defendants contend that "[i]t is not enough to trigger the work product protection that the subject matter of a document relates to a subject that

might be conceivably litigated." *Id.* at 5 (citing *Textron*, 577 F.3d at 29). According to the Defendants, because the Plaintiffs are unable to show that the Document was created "in anticipation of" some other litigation, the work product doctrine does not apply. *Id.*

The Defendants also reiterate that even if the work product doctrine applied, the Court should consider the document because the Defendants have a substantial need for the Document. *Id.* at 5–6. They contend that they need the Document because it demonstrates that PPLC's own consultant agrees with Sarah Emerson, the Defendants' expert, who concluded that PPLC is unlikely to load crude oil onto vessels in the South Portland harbor for the foreseeable future due to market factors and that the pipelines will remain idle indefinitely regardless of the outcome of this case. *Id.* at 6. (citing *Decl. of Sarah Emerson* (ECF No. 91)). The Defendants also contend that the Document rebuts the testimony of PPLC's president, Thomas Hardison, who attempted to cast doubt on Ms. Emerson's opinions. *Id.* The Defendants conclude that they have a substantial need for the Document because this issue bears directly on the Court's jurisdiction in this case and can be found nowhere else in the record. *Id.*

Finally, the Defendants argue that Mr. Lloyd's opinions contained in the Document are not a "communication between attorney and client"; Mr. Lloyd included his opinions for a potential tax abatement application in draft appraisal reports and sent the drafts to PPLC only. *Id.* at 6–7. According to the Defendants, that attorneys from Pierce Atwood "subsequently reviewed the [Document] is immaterial to whether

the appraiser's original opinions are privileged." *Id.* at 7. Therefore, the Defendants contend that the attorney-client privilege does not protect Mr. Lloyd's opinions that appear in the Document. *Id.*

## III. DISCUSSION

To summarize, the Document is an excerpt of a draft appraisal report prepared by Mr. Lloyd in support of PPLC's tax abatement application to the City of South Portland. A staff person at Pierce Atwood "technically" created the Document by copying the text of the draft report into a word processor. Pierce Atwood attorneys edited the text in the Document, and PPLC sent the edits to Mr. Lloyd, who in turn incorporated the edits into his final Report. Based on these facts, the Court must determine whether the Document is entitled to protection, and if so, whether the Plaintiffs have waived that protection. The Court first addresses whether the attorney-client privilege protects the Document. Next, the Court analyzes whether the Document, or any portion of it, constitutes attorney work product. Finally, the Court turns to the issue of waiver.

### A. Attorney-Client Privilege

The party invoking attorney-client privilege bears the burden of establishing that it applies to the communications at issue and that it has not been waived. *XYZ Corp.*, 348 F.3d at 22. The First Circuit has described the elements of the privilege:

> (1) Where legal advice of any kind is sought (2) from a professional legal adviser in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal adviser, (8) except the protection be waived.

*In re Grand Jury Subpoena (Mr. S.)*, 662 F.3d 65, 71 (1st Cir. 2011) (citing *Cavallaro v. United States*, 284 F.3d 236, 245 (1st Cir. 2002) (quoting 8 JOHN H. WIGMORE, *Evidence* § 2292, at 554 (John T. McNaughton ed. 1961)); *see also XYZ Corp.*, 348 F.3d at 22 ("The privilege protects only those communications that are confidential and are made for the purpose of seeking or receiving legal advice"). "[C]ourts must take care to construe this privilege narrowly." *In re Grand Jury Subpoena (Mr. S.)*, 662 F.3d at 71.

The Plaintiffs argue that the Document is entitled to the attorney-client privilege because "the Document itself was created by counsel, reflects legal advice drafted by counsel in the form of express comments and proposed changes to the Document, and was sent by counsel to PPLC." *Pls.' Opp'n* at 6. Yet the Plaintiffs fail to account for the fact that PPLC disclosed the Document to Mr. Lloyd, a third party. "When otherwise privileged communications are disclosed to a third party, the disclosure destroys the confidentiality upon which the privilege is premised." *United States v. Awer*, 770 F.3d 83, 94 (1st Cir. 2014) (quoting *XYZ Corp.*, 348 F.3d at 22); *see also Cavallaro*, 284 F.3d at 246–47 (1st Cir. 2002) ("Generally, disclosing attorney-client communications to a third party undermines the privilege).

An exception to this general rule exists for third parties "employed to assist a lawyer in rendering legal advice." *Cavallaro*, 284 F.3d at 247. The exception reflects an understanding that "the complexities of modern existence prevent attorneys from effectively handling clients' affairs without the help of others." *Id.* (quoting *United States v. Kovel*, 296 F.2d 918 (2nd Cir. 1961)). For instance, "the presence of an

accountant, whether hired by the lawyer or by the client, while the client is relating a complicated tax story to the lawyer, ought not destroy the privilege . . . ." *Id.* (quoting *United States v. Kovel*, 296 F.2d 918 (2nd Cir. 1961)). In order for the exception to apply, the communication with the third-party must be made "for the purpose of obtaining legal advice from the lawyer." *Id.*

The facts of the present case demonstrate that the exception for necessary third-parties does not apply in this case. Mr. Lloyd was not employed to assist Pierce Atwood in rendering legal advice to PPLC. Rather, Mr. Lloyd was employed to create an appraisal report of PPLC's property. *Pls.' Opp'n* at 1–3. Pierce Atwood created the Document as a way to edit Mr. Lloyd's draft of the appraisal report. *Id.* 2–3. As the Plaintiffs admit, Pierce Atwood sent the Document directly to PPLC, and PPLC forwarded the Document to Mr. Lloyd. *Id.* at 6; *see also May 25, 2016 Email* at 1. There is no indication that PPLC sent Mr. Lloyd the Document "for the purpose of obtaining legal advice" from Pierce Atwood. Instead, it appears that PPLC forwarded the Document to Mr. Lloyd so that Mr. Lloyd could make the suggested changes to his draft report. *See May 25, 2016 Email* at 1 ("[W]e respectfully request you make the following edits to pages 5 to 7 of the appraisal reports"). Disclosing the Document to Mr. Lloyd destroyed the confidentiality upon which the attorney-client privilege is based. *See XYZ Corp.* 348 F.3d at 22. Consequently, the Plaintiffs failed to meet their burden of establishing that the Document is entitled to the attorney-client privilege.

### B.    Attorney Work Product Doctrine

The work product doctrine, established in *Hickman v. Taylor*, 329 U.S. 495 (1947), and codified for civil discovery in Federal Rule of Civil Procedure 26(b)(3), protects from disclosure "documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative . . . ." FED. R. CIV. P. 26(b)(3)(A); *see State of Maine v. United States Dep't of Interior*, 298 F.3d 60, 66 (1st Cir. 2002). The purpose of the doctrine is to provide counsel a "certain degree of privacy, free from unnecessary intrusion by opposing parties and their counsel," in the absence of which "the interests of the clients and the cause of justice would be poorly served." *Hickman,* 329 U.S. at 510–11.

In this case, the central dispute is whether the Document was prepared in "anticipation of litigation." "A party seeking to assert that materials were prepared in 'anticipation of litigation' must state with some specificity which litigation was anticipated, and what nexus exists between the anticipated litigation and the contents of the materials in question or the motivation for their creation." *In re Grand Jury Subpoena*, 220 F.R.D. 130, 146 (D. Mass. 2004). Here, the Plaintiffs contend that Pierce Atwood created the Document in anticipation of the tax abatement proceedings—which the Plaintiffs describe as a "species of litigation," *Pls.' Opp'n* at 4, n.5. They point out that, in general, unless the tax issue identified in an abatement application is settled, the case will eventually end up in court. *Id.* Additionally, the Plaintiffs assert that Pierce Atwood created the Document in anticipation of the instant federal litigation. *Pls.' Opp'n* at 5–6. The Court addresses these contentions in turn.

## 1.    Tax Abatement Proceedings

As an initial matter, the Court resolves that the act of applying for a tax abatement does not constitute litigation for purposes of the work product doctrine. To be sure, the Plaintiffs are correct that the municipal tax assessor may deny a tax abatement application, and the matter may ultimately result in litigation.[4]  *Id.* at 4, n.5.  However, the fact that an application may eventually lead to litigation does not mean that the application is itself part of the litigation process for purposes of Rule 26.

Whether a proceeding can be considered "litigation" depends on whether the proceeding is adversarial.  *See Nevada*, 517 F. Supp. 2d at 1260; *see also In re Grand Jury Subpoena*, 220 F.R.D at 146–47 ("'Litigation' includes civil and criminal trial proceedings, as well as adversarial proceedings before an administrative agency, an arbitration panel or a claims commission, and alternative-dispute-resolution proceedings such as mediation or mini-trial . . . In general, a proceeding is adversarial when evidence or legal argument is presented by parties contending against each other with respect to legally significant factual issues") (quoting RESTATEMENT (THIRD) OF LAW GOVERNING LAWYERS § 87 cmt. h (1998)); *see also Pac. Gas & Elec. Co. v. United States*, 69 Fed. Cl. 784, 792–93, 802 (2006) (holding that the adversarial aspects of electric utility rate-setting proceedings before a utilities commission

---

[4]     If the applicant disagrees with the assessor's decision, the applicant may appeal the decision within sixty days to a local board of assessment pursuant to 36 M.R.S. § 843(1).  The applicant may appeal any determination of the municipal board relating to nonresidential properties with an assessed value of $1 million or greater to the State Board of Property Tax Review, 36 M.R.S. § 843(1-A), and then on to the Superior Court.  *Id.*; ME. R. CIV. P. 80C.  The Court need not determine precisely when "litigation" begins during this appeals process.  It is sufficient for purposes of this Order that the initial act of applying for a tax abatement with a municipal assessor does not constitute litigation.

constituted "litigation" for purposes of the work product doctrine); *Willingham v. Ashcroft,* 228 F.R.D. 1, 4 (D.D.C.2005) ("[T]o constitute 'litigation,' the proceeding must be adversarial").

As the Defendants point out, submitting an application to a municipality for a tax abatement "lacks the hallmarks of adversarial litigation." *Defs.' Mot.* at 4. An applicant alleging an error in the valuation of a property does not file a complaint against the municipality; rather, the applicant submits an application for a tax abatement to a municipal tax assessor.[5] 36 M.R.S. § 841(1). The application must state the grounds for an abatement. *Id.* Upon receipt of the application, the tax assessors "may make such reasonable abatement as they consider proper to correct any illegality, error or irregularity . . . ." 36 M.R.S. § 841(1).

There is no suggestion that the Rules of Evidence or the Maine Administrative Procedure Act apply to the assessor's review of the application. Indeed, at least at this early stage of the application, the process does not appear to feature any adversarial aspects at all: there is no complaint or motions, no party intervenes in opposition to the application, and there are no witnesses or cross-examination. Simply put, the mere act of submitting a tax abatement application does not commence litigation for purposes of the work product doctrine. Hence, the Document was not necessarily "prepared in anticipation of litigation" just because Pierce Atwood created the Document in support of PPLC's tax abatement application.

---

[5]     The state of Maine provides an online abatement application template that closely resembles the application PPLC submitted in this case. *See Application for Abatement of Property Taxes*, available at http://www.maine.gov/revenue/forms/property/apps/abatementapp.pdf (last accessed July 10, 2017.).

Furthermore, the Court concludes that Pierce Atwood did not create the Document "in anticipation" of potential future litigation relating to PPLC's tax abatement application. The First Circuit instructs that documents should be deemed "prepared in anticipation of litigation" and within the scope of [Rule 26] only if, "in light of the nature of the document and the factual situation in the particular case, the document can be fairly said to have been prepared or obtained *because of* the prospect of litigation." *State of Maine v. United States Dep't of Interior*, 298 F.3d 60, 68 (1st Cir. 2002) (emphasis in original) (quoting *United States v. Adlman*, 134 F.3d 1194, 1202 (2nd Cir. 1998)); *see also* 8A CHARLES ALAN WRIGHT, ARTHUR R. MILLER & RICHARD L. MARCUS, FEDERAL PRACTICE AND PROCEDURE § 1381 (3d ed. 2004) (WRIGHT, MILLER & MARCUS). "[T]he 'because of' standard does not protect from disclosure documents that are prepared in the ordinary course of business or that would have been created in essentially similar form irrespective of the litigation." *Id.* (internal quotation marks omitted).

Here, the record confirms that Pierce Atwood would have created the Document regardless of the potential for future litigation regarding the tax abatement application. Pierce Atwood created the Document to edit Mr. Lloyd's draft appraisal report, which Pierce Atwood and PPLC commissioned to support PPLC's abatement application. PPLC and Pierce Atwood prepared the application—as well as the Document—in the hopes of securing a tax abatement from the municipal assessor. Indeed, PPLC and Pierce Atwood no doubt hoped that the assessor would grant their application, thereby avoiding future litigation altogether. Thus, the Court

cannot conclude that Pierce Atwood created the Document "because of" litigation because it would have created the Document in support of the application irrespective of the potential for litigation. *See Maine v. Dep't of Interior*, 298 F.3d at 68; *see also Textron*, 577 F.3d 21, 29 (2009) ("It is not enough to trigger work product protection that the *subject matter* of a document relates to a subject that might conceivably be litigated") (emphasis in original). In sum, the Court concludes that the Document, to the extent it edited the Report with an eye only toward the tax abatement application, was not "prepared in anticipation of litigation."

### 2. Pending Federal Litigation

The Court's work product inquiry is not complete, however, because the edits contained in the Document do not just relate to the tax abatement application. Rather, it appears that a Pierce Atwood attorney made at least one edit and drafted a comment in the Document with an eye toward the present federal litigation. Specifically, a Pierce Atwood attorney crossed out Mr. Lloyd's opinion that "[c]onsidering the level of environmental opposition to it is unlikely, even if [PPLC] wins [the federal litigation], that the Portland-Montreal Pipeline will be reversed." *Document* at 2. The attorney noted in the margin that in this case, the Defendants are arguing that the matter is not ripe, and the attorney expresses concern that the Defendants might use Mr. Lloyd's opinion to support that argument. *Id.*

The Court resolves that work product protections do extend to this portion of the Document because these annotations "can be fairly said to have been prepared or obtained *because of* the prospect of litigation"—namely, this litigation. *See Maine v.*

19

*Dep't of Interior*, 298 F.3d at 68. It is of no consequence that the Pierce Atwood attorney created the edits in the Document in the course of working on a separate tax abatement matter. As the Plaintiffs correctly point out, work product protections persist from one matter to another as long as the product was prepared by or for a party to the subsequent litigation. *See FTC v. Grolier, Inc.*, 462 U.S. 19, 25 (1983) ("[T]he literal language of [Rule 26(b)(3)] protects materials prepared for *any* litigation or trial so long as they were prepared by or for a party to the subsequent litigation"); *Planalto*, 256 F.R.D. at 19 ("The question whether documents protected by the work product doctrine may continue to be so protected in a later action has been answered in the affirmative in this district"). The Court therefore concludes that the Document, insofar as it was prepared in anticipation of the current litigation, is entitled to protection under the work product doctrine.

However, work product protection under Rule 26 is not absolute. A court may order discovery of protected materials if the materials are otherwise within the scope of discovery and the opposing party "shows that it has a substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means." FED. R. CIV. P. 26(b)(3)(A)(i)–(ii). If the court orders discovery of the work product based on the opposing party's substantial need, the court still "must protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of a party's attorney or other representative concerning the litigation." FED. R. CIV. P. 26(b)(3)(B).

Here, the Court concludes that the Defendants have shown that they have a substantial need for the portions of the Document relating to the current federal litigation. The Defendants claim that they have a substantial need for the Document because it speaks to the "*actual* intent" of PPLC and its plans for the pipeline and because it bears directly on a dispositive issue in the case—namely, ripeness. *Defs.' Mot.* at 7. The Defendants also assert that the Document demonstrates that Mr. Lloyd agrees with the Defendants' consultant, Sarah Emerson, who concluded that PPLC is unlikely to reverse the flow of the pipeline in the foreseeable future due to market forces. *Defs.' Reply* at 7.

Mr. Lloyd's original report stated in part:

> Given these developments, the PMPL could best be classified as a distressed asset. It is possible the line could go idle or possibly be repurposed.

The Pierce Atwood attorney lined out the second part of the sentence:

> Given these developments, the PMPL could best be classified as a distressed asset. It is possible the line could go idle ~~or possibly be repurposed~~.

The final version of the appraiser's report adopted the attorney's edit:

> Given these developments, the PMPL could best be classified as a distressed asset. It is possible the line could go idle.

Similarly, Mr. Lloyd went on to write in the original report:

> Considering the level of environmental opposition it is unlikely, even if they win the lawsuit, that the Portland-Montreal Pipeline will be reversed. Thus, the most likely future for the pipeline is for it to be idled for an indefinite period.

The Pierce Atwood attorney lined out the first sentence:

~~Considering the level of environmental opposition it is unlikely, even if they win the lawsuit, that the Portland Montreal Pipeline will be reversed.~~ Thus, the most likely future for the pipeline is for it to be idled for an indefinite period of time.

The final version of Mr. Lloyd's appraisal report contained just the last sentence.

This sequence raises the obvious question as to where Mr. Lloyd obtained the information in the struck portions of his original report. If he obtained that information directly from PPLC's officers, the struck statements would be consistent with the statements that PPLC made in an open letter to the citizens of South Portland on October 30, 2013, just before the November 5, 2013 referendum on the Waterfront Protection Ordinance. Yet, if he obtained the information from sources other than the PPLC officials, the struck information would not be attributable to PPLC. As the Court identified in its May 11, 2017 Interim Order, PPLC's actual intentions about reversing the flow go to whether the Court has subject matter jurisdiction. *Interim Order* at 1 (ECF No. 156). In light of the nature of the material, it is difficult to understand how the Defendants could have obtained the substantial equivalent of this information through other means.

The Court is conscious of the Rule's admonition to "protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of a party's attorney or other representative concerning the litigation." FED. R. CIV. P. 26(b)(3)(B). This provision arguably applies to the margin comment of the Pierce Atwood attorney, but from the Court's viewpoint, the attorney's comment is innocuous and unremarkable and it provides context to the struck portion of the original report. If anything, the attorney's comment tends to contradict the more negative inferences that could have

been made from the struck language. To release the edits without the comment would be, in the Court's view, misleading. Accordingly, the Court allows the release of the attorney margin comment as well.

## C. Waiver

Having concluded that the edits to the original report are neither privileged nor protected, the Court does not reach whether the Plaintiffs waived their work product protection by disclosing the Document to the Defendants during discovery.[6]

## IV. CONCLUSION

The Court GRANTS the Defendants' Motion for Leave to File Pleading Under Seal (ECF No. 133), the Plaintiffs' Motion for Leave to File Pleading Under Seal (ECF No. 144), and the Defendants' Motion for Leave to File Reply Memorandum Under Seal (ECF No. 150). The Court GRANTS the Defendants' Motion for Leave to File Document in Connection with Motion for Summary Judgment for which Privilege is Disputed (ECF No. 133-1).[7]

---

[6] Federal Rule of Evidence 502(e) permits, but does not require, the parties to agree in advance that disclosure of privileged or protected information during discovery does not result in waiver. FED. R. EVID. 502 (comm. explanatory n. (2007)) ("[P]arties can enter an agreement to limit the effect of waiver by disclosure between or among them"). If the parties desire their agreement to have binding effect in other state or federal litigation, the parties must present their agreement to the court for approval. *Id.* ("The rule makes clear that if parties want protection against non-parties from a finding of wavier by disclosure, the agreement must be made part of a court order"). Even if the parties do not reach such an agreement, Rule 502(d) permits the court to issue an order sua sponte that disclosure of privileged or protected information in connection with a federal proceeding does not result in waiver. FED. R. EVID. 502(d).

In this case, the parties did not enter into a Rule 502 agreement. The parties never presented a Rule 502 agreement to the Court for approval, nor did the Court enter a Rule 502 order sua sponte.

[7] This ruling raises two interrelated sealing questions First, for the same reason the parties filed their documents under seal, the Court is sealing this Order. If the Plaintiffs wish to challenge the Order on appeal, the revelation of the contents of the Order will mean that the document itself is no longer secret. Second, there is the question of whether the parties' filings on this issue should remain under seal.

If either the Plaintiffs or Defendants wish to object to the lifting of the sealing of the Defendants' motion and attachments (ECF No. 133), the Plaintiffs' response and attachments (ECF

SO ORDERED.

/s/ John A. Woodcock, Jr.
JOHN A. WOODCOCK, JR.
UNITED STATES DISTRICT JUDGE

Dated this 14th day of August, 2017

---

No.144), the Defendants' reply and attachments (ECF No. 150), and this Order, they must do so within seven days of the date of this Order.

  If there is an objection to the unsealing of those filings, the Court will require counsel to explain why these filings are not "judicial documents" and this is not a judicial Order, subject to disclosure under *United States v. Kravetz*, 706 F.3d 47 (1st Cir. 2013). If neither party objects to the lifting of the sealing within seven days of the date of this Order, the Court will lift the seal of each filing, including this Order.