UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

PORTLAND PIPE LINE )
CORPORATION, et al., )
 )
      Plaintiff, )
 )
      v. ) 2:15-cv-00054-JAW
 )
CITY OF SOUTH )
PORTLAND, MAINE et al., )
 )
      Defendant. )

**ORDER DEFERRING RULING ON DEFENDANTS' MOTION FOR VIEW**

The Court defers final action on a motion for a view until trial, when it will be better able to assess the need for a view in light of the evidence the parties have presented. At the same time, the Court addresses a number of its concerns about a view that militate against granting the request for one.

**I.    BACKGROUND**

With a bench trial scheduled to commence on June 18, 2018, on April 25, 2018, the city of South Portland (the City) filed a motion requesting that the Court view "certain properties that are at the heart of the case in connection with the trial scheduled to begin on June 18, 2018." *Defs.' Mot. for View* at 1 (ECF No. 206). To assess the purpose of the ordinance and the resulting local benefits, the City claims "it will be important for the Court to understand how close PPLC's [Portland Pipe Line Corporation] facilities are to sensitive areas such as schools, parks, residences, and potentially developable properties, as well as to view the facilities in context for

a visual assessment of construction impacts . . . ." *Id.* at 1-2. The City suggests that the vistas and the scope of the structures at issue are not capable of re-creation in still or video photography. *Id.* at 4-5. The City also points out that the properties are roughly four miles from the courthouse in Portland, and estimates that the total time for transportation and site-inspection may take less than 90 minutes. *Id.* at 6. Specifically, the City asks the Court to view: (1) Bug Light Park/Portland Breakwater Lighthouse (Madison Street), (2) the so-called Cacoulidis properties (1 Madison/149 Front/Cushing Point), (3) Kaler Elementary School (165 S. Kelsey Street), and the South Portland High School track (637 Highland Avenue). *Id.* at 2.

On May 16, 2018, PPLC filed an opposition, requesting the Court deny the motion or, in the alternative, view several additional properties, such as Rigby Yard and several nearby petroleum facilities currently in operation. *Pls.' Opp'n to Defs.' Mot. for View* at 1, 4-5 (ECF No. 216). PPLC argues that aerial photography will offer sufficient or superior evidence of the relevant spatial relationships, and says the City has not adequately explained why it claims photography is inadequate. *Id.* at 2-3. PPLC contends that the City's motion is based on "numerous incorrect, or at least highly contested, premises," including the City's claim that flow reversal would result in an intensification of the existing uses, and how construction of seventy-foot smokestacks might mar aesthetic vistas when they have not been built and might not be required. *Id.* at 3. PPLC also highlights the logistical difficulties of any view, which would "attract numerous concerned spectators and media representatives. . . ." *Id.* at 3-4.

2

On May 30, 2018, the City filed a reply. *Defs.' Reply Mem. in Resp. to Pls.' Opp'n to Defs.' Mot. for View* (ECF No. 217). The City denies PPLC's suggestion that a reversal would not result in an intensification of use, and points out that a factual dispute of this kind "is not a reason to reject a view." *Id.* at 1. The City also claims that the public can view the properties at any time and says there is no requirement that the public accompany the Court on a view. *Id.* at 2. Finally, the City argues that the additional properties that PPLC asks the Court to view "are only marginally relevant to the case, and view of those additional properties would not assist the Court in reaching a decision." *Id.*

## II. DISCUSSION

Most of the cases discussing the propriety of site-inspections involve jury trials. A decision to permit a jury view is "entrusted to the sound discretion of the trial court." *United States v. Crochiere*, 129 F.3d 233, 236 (1st Cir. 1997). This discretion is part of the trial court's authority to decide "matters relating to the orderly conduct of the trial and the mode of presenting evidence." *United States v. Passos–Paternina*, 918 F.2d 979, 986 (1st Cir. 1990). In making this determination, a court may consider such factors as "the orderliness of the trial, whether the jury would be confused or misled, whether it would be time-consuming or logistically difficult, and whether cross-examination had been permitted regarding the details of the scene." *Id.* An additional factor is whether "the view would . . . have presented any clearer view of the evidence than was achieved through the use of photographs at trial . . . ." *United States v. Pettiford*, 962 F.2d 74, 76 (1st Cir. 1992).

The same discretion and principles generally apply to bench trials. *See* 2 *McCormick on Evid.* § 219 (7th ed. 2016) ("[I]t is frequently said that even without express statutory authorization there is an inherent power in the trial judge to order a view by the jury, or, in a judge-tried case, to take a view personally" (footnote omitted)). A bench trial blunts some of the difficulties inherent in a jury view, such as the special precautions required to limit interaction among the jurors, the parties, non-party participants, and the subjects of the view. *See Clemente v. Carnicon-Puerto Rico Mgmt. Assocs., L.C.*, 52 F.3d 383, 386 (1st Cir. 1995), *abrogated on other grounds by United States v. Gray*, 199 F.3d 547 (1st Cir. 1999). Even so, most of the difficulties remain. A site-visit will require special security precautions and additional expense and trial time for court personnel. *See Rooney v. Sprague Energy Corp.*, 495 F. Supp. 2d 135, 137 (D. Me. 2007) (noting the time for a site-visit would likely exceed the movant's estimate because of "[t]he logistics of transportation, security, traffic, snacks, bathroom breaks, and miscellaneous delays . . .").

Here, any reduced logistical difficulties from the absence of a jury are offset by the additional complexities of allowing members of the public to attend the site-visit. Although the City takes the position (without citing any authority) that the Court may exclude members of the public from the view, the Court is dubious. The First Circuit has reiterated "that public monitoring of the judicial system fosters the important values of quality, honesty and respect for our legal system." *In re Providence Journal Co., Inc.*, 293 F.3d 1, 9-10 (1st Cir. 2002) (quoting *Siedle v. Putnam Investments, Inc.*, 147 F.3d 7, 10 (1st Cir. 1998)).

4

Here, the properties that the City wishes the Court to view all appear to be public property.[1] While it is true, as the City says, that "the public is able to see the properties at issue at any time it wants, whether or not the Court takes a view," this does not answer what the Court should do if members of the public wish to attend the view. The City suggests that "[t]here is no requirement that it [the public] accompany the Court on a view, and Plaintiffs cite no case to the contrary." *Id.* at 2. In light of the presumption of public access, it is not the Plaintiffs' burden, it is the City's burden to convince the Court that it may either bar the public or restrict the way the public accesses a public space, and the City has cited no case that would allow it to do so. The Court is troubled by the notion that it would treat a view differently from other court proceedings for purposes of public access. Yet, if the public were present at a view of a public space, it is also true the Court would have little effective control over what the public said or did during the view.

Also, if the Court were to grant the City's request for a view, PPLC's alternative request for a view of some of its property would present different issues of allowing public access to private property and what controls, if any, the Court should impose on public participation in PPLC's view request.

---

[1] The Court is not clear about the so-called "Cacoulidis" properties mentioned in the City's motion. *Defs.' Mot. for View* at 2. The City cites the declaration of Charles Haeuser for a description of the Cacoulidis properties. *Id.* (citing *Declaration of Charles Haeuser*, ECF # 92 at pp. 8-11). Mr. Haeuser's declaration discusses redevelopment plans for an area surrounding PPLC's property, but the Court was unable to locate any reference in Mr. Haeuser's declaration and his attachments to the Cacoulidis properties. There is a references to the "Cacoulidis property" on page twenty-one of chapter six of the City's comprehensive plan update, but it does not add any clarity. *Declaration of Jesse Harlan Alderman* Attach 29 Excerpts of *South Portland, Maine Comprehensive Plan Update* at 25 (ECF No. 90).

From the Court's perspective, if there is a case where the public could be excluded or restricted from a view, this is not it.  This case has been brought about by a very public debate in the city of South Portland, resulting in the enactment and defense of the ordinance, and at each hearing, the Court has observed a number of onlookers, presumably members of the public, who by their continuing physical presence have evidenced an active interest in these proceedings.  The Court would be loath to issue an order excluding them from a portion of the hearing or an order that attempted to predict behavior and curtail it before it occurred.

Although the City suggests a view can be accomplished with little or no comment from the parties and others, it is unclear how a visit would be useful to the Court without context from knowledgeable individuals explaining what the Court is viewing.  Meanwhile, the Court must create an accurate record of any conversations. *Clemente*, 52 F.3d at 386; *Lillie v. United States*, 953 F.2d 1188, 1191 (10th Cir. 1992) ("When a judge engages in off-the-record fact gathering, he essentially has become a witness in the case.  The presiding judge 'may not testify in that trial as a witness'") (quoting FED. R. EVID. 605). Creating an accurate record can be difficult in outdoor spaces.  *See Plaquemines Holdings, L.L.C. v. CHS, Inc.*, 597 F. App'x 763, 771 (5th Cir. 2015) ("Although a court reporter was present, the reporter could not hear all of the judge's conversations at the site-visit due to the ambient noise").

Finally, the Court cannot know whether other means—such as testimony, photographs, videotapes, aerial shots, and maps—will be sufficient to grasp the City's health, development, and aesthetic concerns and PPLC's separate issues, or whether

6

a site-inspection would facilitate the Court's task. Although the Court has the concerns set forth in this order, the Court withholds final determination on the City's request and PPLC's alternative request until after it has seen the other evidence and can weigh the need for a view. If the City wishes to press its request for a view, the Court expects the City to present the Court with a satisfactory response to the Court's concerns as set forth in this order. Similarly, if PPLC wishes to have the Court take a view of the properties it has listed, the Court expects the same from PPLC.

## III.  CONCLUSION

The Court DEFERS ruling on the Defendants' Motion for View (ECF No. 206).

SO ORDERED.

    /s/ John A. Woodcock, Jr.
JOHN A. WOODCOCK, JR.
UNITED STATES DISTRICT JUDGE

Dated this 1st day of June, 2018