UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

PORTLAND PIPE LINE            )
CORPORATION, et al.,          )
                              )
        Plaintiffs,            )
                              )
    v.                         )      2:15-cv-00054-JAW
                              )
CITY OF SOUTH PORTLAND,        )
et al.,                        )
                              )
        Defendants.            )


**ORDER ON MOTIONS IN LIMINE CONCERNING STATEMENTS OF CITY OFFICIALS AND MEMBERS OF THE PUBLIC**

In anticipation of trial on Portland Pipeline Corporation's (PPLC) Commerce Clause challenge to the city of South Portland's (the City) ordinance prohibiting bulk loading of crude oil onto ships (the Ordinance), the parties filed competing motions in limine concerning the admissibility of voluminous statements from City officials and members of the public. The Court grants PPLC's motion and denies the City's motion because courts can consider a broad array of evidence when tasked with discerning improper legislative purpose.

**I.    PROCEDURAL HISTORY**

On February 6, 2015, PPLC filed a nine-count complaint with this Court against the city of South Portland and Patricia Doucette. *Compl.* (ECF No. 1). On March 31, 2015, the Defendants filed a motion to dismiss the Complaint. *Defs.' Mot. to Dismiss the Compl. Pursuant to Rule 12(b)(1)* (ECF No. 16); *Mem. of Law in Supp. of Defs.' Mot. to Dismiss Pursuant to Rule 12(b)(1)* (ECF No. 17). The Court denied

the motion to dismiss on February 11, 2016. *Order on Defs.' Mot. to Dismiss* (ECF No. 29). Accordingly, the Defendants filed an answer to the Complaint on February 29, 2016. *Answer of Defs. City of South Portland and Patricia Doucette* (ECF No. 30).

On November 17, 2016, the Plaintiffs filed a motion for summary judgment. *Pls.' Mot. for Summ. J.* (ECF No. 87). That same day, the Defendants filed a consolidated motion to dismiss pursuant to Rule 12(b)(1) and a cross motion for summary judgment. *Defs.' Consolidated Mot. to Dismiss Pursuant to Rule 12(b)(1) and Mot. for Summ. J.* (ECF No. 88). The Court denied the renewed Motion to Dismiss on August 24, 2017, and a second renewed Motion to Dismiss on December 12, 2017, before turning its attention to the cross-motions for summary judgment. *Order on Defs.' Consolidated Mot. to Dismiss Under Rule 12(b)(1)* (ECF No. 185); *Order on Defs.' Renewed Mot. to Dismiss* (ECF No. 199). On December 29, 2017, the Court granted summary judgment in favor of the City on all issues except the Commerce Clause challenge in Count V. *Order on Mots. for Summ. J.* at 228 (ECF No. 200) (*Summ. J. Order*). In the summary judgment order, the Court admitted statements from City officials like DOC members and City Councilors, but determined that public statements regarding the Ordinance and its predecessor ballot initiative, the Waterfront Protection Ordinance (WPO), were not probative of the Ordinance's primary purpose. *Id.* at 42-43 n. 80, 44-45 n.85.

Trial is set for June 18 to June 22, 2018. *Notice of Bench Trial* (ECF No. 2014). On April 25, 2018, the City filed a motion to have the Court view certain properties in the city of South Portland, including PPLC's tanks and pier facilities. *Defs.' Mot.*

2

*for View* (ECF No. 206). On June 1, 2018, the Court deferred ruling on the City's motion until trial. *Order Deferring Ruling on Defs.' Mot. for View* (ECF No. 218).

On May 11, 2018, PPLC filed a motion in limine to admit certain statements of City officials and members of the public, and the City filed a competing motion to exclude those statements. *Pls.' Mot.* in Limine *to Admit into Evidence Statements by City Officials and Members of the Public* (ECF No. 208) (*Pls.' Mot.*); *Defs.' Mot.* in Limine *to Exclude Irrelevant and Inadmissible Statements* (ECF No. 209) (*Defs.' Mot.*). The City filed its response to the PPLC's motion on June 1, 2018, and the PPLC filed its response to the City's motion on June 4, 2018. *Defs.' Opp'n to Pls.' Mot.* in Limine *to Admit into Evidence Statements by City Officials and Member of the Public* (ECF No. 219) (*Defs.' Opp'n*); *Pls.' Obj. to Defs.' Mot.* in Limine *to Exclude Statements Made by City Officials and Members of the Public* (ECF No. 223) (*Pls.' Opp'n*). On June 8, 2016, PPLC filed its reply to the City's response, and the City filed its reply to PPLC's response. *Pls.' Reply in Support of their Mot.* in Limine *to Admit into Evidence Statements by City Officials and Members of the Public* (ECF No. 224) (*Pls.' Reply*); *Reply in Support of Defs.' Mot.* in Limine *to Exclude Irrelevant and Inadmissible Statements* (ECF No. 226) (*Defs.' Reply*).

## II. THE PARTIES' POSITIONS

### A. The Motions

PPLC seeks to admit statements from City officials and members of the public made in public meetings, emails, and campaign literature between July 2013 and July 2014, the period beginning with consideration of the WPO and ending with the enactment of the Ordinance. *Pls.' Mot.* at 1-3 n.2. PPLC argues that statements from

3

city officials are "highly probative" because "[t]hey provide unfiltered evidence" of the City's true goals in enacting the Ordinance. *Id.* at 3-4. It asserts that public comments are admissible because "public input reflects the pressures imposed upon the decision-makers, putting the decision-makers' actions in context." *Id.* at 4-6. PPLC insists that the history and public process of the predecessor ordinance is relevant because of "the integrated nature of the publically initiated WPO and the final version of the Ordinance . . . ." *Id.* at 7-8. PPLC claims that the public comments put the official statements in context, and it claims the Court may choose to give more or less weight to comments "based on speaker, timing, and content" but maintains that they are all admissible. *Id.* at 9-10.

The City seeks to exclude all statements about the WPO, public comments about the Ordinance, statements by the DOC facilitator, and information regarding PPLC's tax payments, particularly because Plaintiff's counsel represented at a telephone conference that they would not seek to introduce statements by the public. *Defs.' Mot.* at 1-2. The City emphasizes that the WPO was a citizen referendum which "[t]he City Council opposed . . . by a vote of 5-1." *Id.* at 4-5. The City also highlights the large volume of material PPLC seeks to introduce. *Id.* at 5-6. It cites caselaw from this Court and the First Circuit indicating that comments from a private sponsor of legislation have little if any probative value compared to official legislative sources. *Id.* at 7 (citing *All. of Auto. Mfrs. v. Gwadosky*, 430 F.3d 30, 39 (1st Cir. 2005); *All. of Auto. Manufacturers v. Gwadosky*, 304 F. Supp. 2d 104, 112 (D. Me. 2004)). Finally, the City contends that the DOC facilitator's comments are not probative because he

4

was not a member of the decision-making body, and PPLC's taxes are irrelevant because the commerce clause protects interstate markets, not particular interstate firms. *Id.* at 8.

In the alternative, if the Court permits PPLC to admit statements by the public, the City requests that the Court allow it access to PPLC's unofficial transcripts and grant leave for the City to admit additional countervailing statements from members of the public. *Id.* at 7 n.2.

**B. The Responses**

PPLC claims it never made a "commitment" to conduct trial without seeking to introduce statements from the public. *Pls.' Opp'n* at 1. PPLC reiterates its argument that the WPO and the Moratorium are relevant legislative history because they represent an integrated sequence of events leading to the Ordinance. *Id.* at 2-4. PPLC contends that many public comments were credited by City officials, including what it calls the "Sanibel Defense" of hiding the true motive and target of its legislation. *Id.* at 4-5. PPLC claims the comments of the DOC facilitator are probative of the Ordinance's purpose because his comments indicate what the DOC's charge was and he "kept the DOC focused on this charge." *Id.* at 5-6. PPLC explains that its tax payments are relevant under the balancing test of *Pike v. Bruce Church, Inc.*, 397 U.S. 137 (1970), because the loss of its tax payments must be subtracted from any local benefits of the Ordinance. *Id.* at 7.

The City maintains that public comments about the WPO are not probative because if the City Councilors credited those comments, they would not have voted against the WPO by a vote of 5-1, and because the WPO was a separate ordinance,

5

the City Councilor's statements are not probative of their later intent. *Defs.' Opp'n* at 1, 3-5. It also suggests that PPLC has not cited any commerce clause cases to rely on such attenuated evidence of legislative purpose. *Id.* at 6-7. Instead, the City says PPLC relies too heavily on race discrimination cases and decisions analyzing ballot initiatives, where statements from the public are more akin to statements of legislators for ordinary legislation. *Id.* at 7-8. The City stresses that the amount of evidence of this sort will be burdensome. *Id.* at 8-9. The City also repeats its request that the Court permit it to supplement its exhibit list and admit documents, such as emails containing additional public statements, as well order PPLC to submit full transcripts of the public meetings. *Id.* at 9-10.

### C. The Replies

According to PPLC, "The City wants the Court to see only the finish line, but not how the race was run." *Pls.' Reply* at 4. PPLC says that racial discrimination cases are relevant because "while a purpose might be impermissible based on a variety of constitutional provisions, the considerations relating to the admissibility of evidence proving the purpose are the same." *Id.* at 4-5. PPLC rejects the City's argument that the volume of evidence presents a problem for the Court because it seeks to admit all of the DVDs of the hearings but will then call the Court's attention to relevant portions. *Id.* at 7. PPLC also asserts that even if the Court sides with PPLC, "it is far too late for the City to attempt to add some still as-yet unidentified, never before referenced or produced documents as exhibits." *Id.* at 6-7. PPLC also argues that its unofficial transcripts of the public meetings are work products, and

6

that the City has had access to the recordings for years and could have prepared its own transcripts. *Id.* at 6.

The City contends that there is "nothing remotely nefarious" about taking care to draft a law that would pass constitutional muster, and that PPLC mistakes concern about negative externalities of tar sands or other crude oil loading with the economic protectionist purpose prohibited by the Commerce Clause. *Defs.' Reply* at 2-4. The City maintains that the DOC facilitator was a consultant, not a City official, and thus his comments cannot show an improper purpose on the part of City officials. *Id.* at 4-5. The City argues that PPLC's tax payments are irrelevant because it will have to pay property taxes no matter what, and since most of the property value is now from the land's potential for redevelopment, the property tax revenue will not be "radically decreased" if the pipeline is not reversed. *Id.* at 5-6 (quoting *Pls.' Opp'n* at 7).

### III. DISCUSSION

#### A. Protectionist Purpose: The WPO and Public Comments

Congress has the power "to regulate commerce with foreign nations, and among the several states, and with the Indian tribes." U.S. CONST. Art. I, section 8, cl. 3. In matters not governed by federal legislation, "the Clause has long been understood to have a 'negative' aspect that denies the States the power unjustifiably to discriminate against or burden the interstate flow of articles of commerce." *Oregon Waste Sys., Inc. v. Dep't of Envirl. Quality*, 511 U.S. 93, 98 (1994); *Wyoming v. Oklahoma*, 502 U.S. 437, 454, (1992); *Welton v. Missouri*, 91 U.S. 275 (1876).

"A state statute . . . that discriminates against interstate commerce on its face, in purpose, or in effect receives a form of strict scrutiny so rigorous that it is usually

fatal. This amounts to a 'virtually per se invalid rule . . . .'" *Gwadosky*, 430 F.3d at 35 (quoting *Pharm. Research & Mfrs. of Am. v. Concannon*, 249 F.3d 66, 79 (1st Cir. 2001) (*PhRMA*)). Discrimination in the dormant commerce context "simply means differential treatment of in-state and out-of-state economic interests that benefits the former and burdens the latter." *Oregon Waste Sys., Inc. v. Dep't of Envtl. Quality of State of Or.*, 511 U.S. 93, 99 (1994). "The modern law of what has come to be called the dormant Commerce Clause is driven by concern about 'economic protectionism— that is, regulatory measures designed to benefit in-state economic interests by burdening out-of-state competitors.'" *Dep't of Revenue of Ky. v. Davis*, 553 U.S. 328, 337-38 (2008) (quoting *New Energy Co. of Ind. v. Limbach*, 486 U.S. 269, 273-74 (1988)).

The Court must seek out the primary purpose of the Ordinance; "[i]ncidental purpose, like incidental effect, cannot suffice to trigger strict scrutiny under the dormant Commerce Clause." *Gwadosky*, 430 F.3d at 39. As the Court explained in the Summary Judgment Order, the seminal case in the shift toward more searching judicial inquiries of legislative purpose is *Village of Arlington Heights v. Metropolitan Housing Development Corp.*, 429 U.S. 252 (1977). The Supreme Court instructed, "Determining whether invidious discriminatory purpose was a motivating factor demands a sensitive inquiry into such circumstantial and direct evidence of intent as may be available." *Id.* at 266. While Courts may conduct a more searching inquiry in cases involving invidious discrimination, the First Circuit looks to the same types of evidence in the dormant commerce clause context. *Family Winemakers of*

*California v. Jenkins*, 592 F.3d 1, 13 (1st Cir. 2010) ("[W]e look to 'the statute as a whole' . . . including statutory text, context, and legislative history, but we also consider whether the statute was 'closely tailored to achieve the legislative purpose' the state asserted." (quoting *Gwadosky*, 430 F.3d at 37-38)).

When tasked with determining if the legislative purpose was improper, courts have looked to the whole sequence of legislative efforts, and courts have sometimes found community members' statements to be probative of legislative purpose. *See e.g. Epperson v. State of Ark.*, 393 U.S. 97, 107-09 n.16 (1968) (mentioning a different state's statute that served as the "antecedent" and discussing public advertisements); *Scott-Harris v. City of Fall River*, 134 F.3d 427, 438 (1st Cir. 1997), reversed on other grounds by *Bogan v. Scott-Harris*, 523 U.S. 44 (1998) ("evidence indicating that the legislators bowed to an impermissible community animus, most commonly manifested by an unusual level of constituent pressure, may warrant such an inference"); *Chabad Lubavitch of Litchfield Cty., Inc. v. Litchfield Historic Dist. Comm'n*, 768 F.3d 183, 199 (2d Cir. 2014) ("[C]ourts assessing discriminatory intent . . . have considered a multitude of factors, including . . . statements made by the decisionmaking body and community members . . . ."); *McNeilus Truck & Mfg., Inc. v. Ohio ex rel. Montgomery*, 226 F.3d 429, 442 (6th Cir. 2000) (finding evidence of protectionist purpose based on letters from "local producers [showing that they] sought the legislation and that consumers had not complained about any problems the regulations ostensibly cured").

The Court concludes the proposed evidence of statements from both City Counselors and members of the public is admissible. The Court will assess the persuasive power of that evidence, based on the nature of the specific statement, the context in which it was made, the speaker, and all the admitted evidence. The weight of authority counsels in favor of a permissive approach, especially in a bench trial. Those statements most probative of prohibited protectionist purpose will be most significant. The legislative findings and the City Counselor statements made while deliberating on the Ordinance will likely be valuable, while the relevance of many public statements concerning the predecessor WPO may be attenuated, in the absence of evidence that the comments shaped the considerations of the City Counselors when they later enacted the Ordinance. Other comments will likely fall between those ends of the spectrum. The Court will, of course, require guidance from the parties on which portions of the voluminous records are most worthy (or not) of its attention.

When the Court examines the counselor's statements and public pressure they faced, it will need a complete, representative picture of those statements and public pressure. Since the Court rules in favor of PPLC on this issue, it will allow the City to supplement its exhibit list through June 14, 2018 in order to present its own records of the city counselor's communications and communication from or with the public. Because the City had access to the recordings of the public meetings and could have prepared its own transcripts, the Court will not order PPLC to file its unofficial transcripts. However, the Court notes that if PPLC wishes the Court to consider the

evidence it submits in the form of recordings, it will only do so if it is able to comprehend the entire body of the public pressure and official comments, as opposed to cherry-picked snippets, which means that transcripts would likely be of great utility for the Court's task.

### B. The DOC facilitator

For the same reasons, the Court concludes the statements of the DOC facilitator are admissible. The Court will consider his status as a consultant, as opposed to a voting member of the DOC when weighing the evidence, but that status does not negate all relevance of his remarks because he was still intimately involved in a key stage of the Ordinance's legislative history. His comments may shed light on the mission of the DOC members.

### C. Tax Payments

If a statute does not discriminate against interstate commerce, meaning that it "regulates evenhandedly to effectuate a legitimate local public interest, and its effects on interstate commerce are only incidental," under the balancing test of *Pike v. Bruce Church, Inc.*, 397 U.S. 137 (1970), "[the statute] will be upheld unless the burden imposed on such commerce is clearly excessive in relation to the putative local benefits." *Id.* at 142. Unlike discriminatory laws, "[s]tate laws frequently survive this *Pike* scrutiny, though not always, as in *Pike* itself." *Davis*, 553 U.S. at 339 (internal citations omitted).

PPLC's tax payments are not relevant to many of the "putative" local benefits because the City asserts predominantly public health, environmental, and aesthetic interests. Statutes seeking to protect these interests will often have economic costs,

11

but that does not undermine the professed benefits. PPLC has not pointed to any authority suggesting that courts are to apply a cost-benefit calculation when assessing the local benefits side of the *Pike* ledger. The use of the word "putative" in the language of the test suggests that courts should focus on the types of benefits the legislature asserts, rather than attempting to determine the net local benefits for themselves after subtracting other local costs.

The Supreme Court expressed a considerable degree of hesitation about this sort of cost-benefit assessment because of the "unsuitability of the judicial process and judicial forums" to predicting economic consequences or burdens of taxes. *Davis*, 553 U.S. at 355. Courts apply some degree of deference to the judgment of legislative fora, because they have "some hope of acquiring more complete information than adversary trials may produce, and an elected legislature is the preferable institution for incurring the economic risks of any alteration . . . ." *Id.* at 356; *see also PhRMA*, 249 F.3d at 84 (focusing on what "[t]he Maine Legislature has decided" about the local benefits of the statute).

Nevertheless, as with the other types of evidence discussed in this order, the Court determines that while the relevance of PPLC tax payments seems remote, the evidence is still admissible. One of the City's asserted benefits is the potential for economic redevelopment of the waterfront properties. The current value of those properties may bear on the Court's assessment of the City's stated goals of economic redevelopment. Once the Court has heard all of the evidence, it will be in a better

position to determine whether this evidence deserves significant weight, or whether it is of little or no value, but it is admissible in this bench trial.

IV.  **CONCLUSION**

The Court GRANTS Plaintiffs' Motion *in Limine* to Admit into Evidence Statements by City Officials and Members of the Public (ECF No. 208) and DENIES Defendants' Motion *in Limine* to Exclude Irrelevant and Inadmissible Statements (ECF No. 209).  In light of the Court's ruling in favor of PPLC, the City may supplement its exhibit list through June 14, 2018 in order to present additional records of the City Counselor's communications and statements from or with the public during the period of consideration of the WPO, the Moratorium, and the Ordinance.

SO ORDERED.

/s/ John A. Woodcock, Jr.
JOHN A. WOODCOCK, JR.
UNITED STATES DISTRICT JUDGE

Dated this 13th day of June, 2018