UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| PORTLAND PIPE LINE CORPORATION, et al., | ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) 2:15-cv-00054-JAW ) |
| CITY OF SOUTH PORTLAND, et al., | ) ) ) |
| Defendants. | ) |

**ORDER ON MOTION IN LIMINE CONCERNING SUMMARY TABLES**

In anticipation of trial on Portland Pipeline Corporation's (PPLC) Commerce Clause challenge to the city of South Portland's (the City) ordinance prohibiting bulk loading of crude oil onto ships (the Ordinance), the City filed a motion in limine to exclude two tables unless PPLC produces the underlying data upon which the tables are based. The tables contain monthly averages of flow volumes through a pipeline segment. Federal Rule of Evidence 1006 applies because the flow tables are summaries containing calculations based on voluminous records, the contents of which PPLC seeks to prove, and therefore, the Court grants the City's motion.

I.  **PROCEDURAL HISTORY**

On February 6, 2015, PPLC and the American Waterways Operators filed a nine-count complaint with this Court against the city of South Portland and Patricia Doucette. *Compl.* (ECF No. 1). On March 31, 2015, the Defendants filed a motion to dismiss the Complaint. *Defs.' Mot. to Dismiss the Compl. Pursuant to Rule 12(b)(1)*

(ECF No. 16); *Mem. of Law in Supp. of Defs.' Mot. to Dismiss Pursuant to Rule 12(b)(1)* (ECF No. 17). The Court denied the motion to dismiss on February 11, 2016. *Order on Defs.' Mot. to Dismiss* (ECF No. 29). Accordingly, the Defendants filed an answer to the Complaint on February 29, 2016. *Answer of Defs. City of South Portland and Patricia Doucette* (ECF No. 30).

On November 17, 2016, the Plaintiffs filed a motion for summary judgment. *Pls.' Mot. for Summ. J.* (ECF No. 87). That same day, the Defendants filed a consolidated motion to dismiss pursuant to Rule 12(b)(1) and a cross motion for summary judgment. *Defs.' Consolidated Mot. to Dismiss Pursuant to Rule 12(b)(1) and Mot. for Summ. J.* (ECF No. 88). On August 8, 2017, the Court held a testimonial hearing and heard oral arguments on the City's renewed Motion to Dismiss. *Min. Entry for Hearing* (ECF No. 179). At the hearing, for purposes of the Motion to Dismiss, the Court determined that the underlying data for a similar table containing monthly average flows through the Enbridge Line 9B pipeline was not discoverable. The Court denied the renewed Motion to Dismiss on August 24, 2017. *Order on Defs.' Consolidated Mot. to Dismiss Under Rule 12(b)(1)* (ECF No. 185). On December 29, 2017, the Court granted summary judgment in favor of the City on all issues except the Commerce Clause challenge in Count V. *Order on Mots. for Summ. J.* at 228 (ECF No. 200).

Trial is set for June 18 to June 22, 2018. *Notice of Bench Trial* (ECF No. 204). On April 25, 2018, the City filed a motion to have the court view certain properties in the city of South Portland, including PPLC's tanks and pier facilities. *Defs.' Mot. for*

*View* (ECF No. 206). On June 1, 2018, the Court deferred ruling on the City's motion until trial. *Order Deferring Ruling on Defs.' Mot. for View* (ECF No. 218). On May 11, 2018, PPLC filed a motion in limine to admit certain statements of City officials and members of the public, and the City filed a competing motion to exclude those statements. *Pls.' Mot.* in Limine *to Admit into Evidence Statements by City Officials and Members of the Public* (ECF No. 208); *Defs.' Mot.* in Limine *to Exclude Irrelevant and Inadmissible Statements* (ECF No. 209). The Court determined that the evidence was admissible, so it granted PPLC's motion and denied the City's on June 13, 2018. *Order on Mots. in Limine Concerning Statements of City Officials and Members of the Public* (ECF No. 230).

On May 11, 2018, the City filed a motion in limine to exclude two summary tables PPLC intends to introduce unless PPLC first produces the underlying data upon which the tables are based. *Defs.' Mot.* in Limine *to Exclude New Summ. Tables Produced by Pls. without Underlying Data* (ECF No. 210) (*Defs.' Mot.*). On June 1, 2018, PPLC filed a response to the City's motion. *Pls.' Obj. to Defs.' Mot.* in Limine *to Exclude Enbridge Line 9B Crude Oil Volume Data* (ECF No. 221) (*Pls.' Opp'n*). The City filed its reply on June 8, 2018. *Reply in Supp. of Defs.' Mot.* in Limine *to Exclude New Summ. Tables Produced by Pls. without Underlying Data* (ECF No. 227) (*Defs.' Reply*).

## II. THE PARTIES' POSITIONS

### A. The City's Motion

The City argues that, despite the Court's ruling on "the discoverability of the underlying data for an earlier iteration of one of these tables . . . in connection with

3

the evidentiary hearing on justiciability," PPLC's intent to introduce the tables at trial without disclosing the underlying data "would be fundamentally unfair and contravene Rule 1006." *Defs.' Mot.* at 3. The City claims it would not be burdensome for PPLC to procure the underlying data from MPLL, as it did just that for one month's worth of the data in a single day in August 2017. *Id.* at 4. The City also claims that the tables are of questionable relevance because they do not contain flows for Enbridge Line 9A—the pipeline bringing oil to refineries in Ontario before remaining volumes proceed to Line 9B—which means that the tables do not indicate whether a bottleneck exists that would prevent PPLC from obtaining committed shippers for a pipeline reversal project. *Id.* at 4 n.6. Finally, the City claims the codes in the data indicating the country and state of origin of batches of oil are "directly relevant to the Commerce Clause claim of discrimination." *Id.* at 5.

### B. PPLC's Response

PPLC emphasizes that the tables are not central to its Commerce Clause claim, but will only "serve[ ] as rebuttal evidence to [the City's] anticipated re-presentation of facts concerning the economic viability of PPLC's pipeline project." *Pls.' Opp'n* at 5. PPLC argues the City's motion is an attempt to get the Court to revisit several of its prior rulings, and serves as an untimely request for reconsideration in violation of Local Rule 7(g). *Id.* at 5-6. PPLC contends that it did not create the document as a way of "'proving' the content of other, voluminous documents; the data contained with the spreadsheet *are themselves* the documents." *Id.* at 6. It maintains that Rule 1006 does not apply because "PPLC did not take a number of separate, independent documents and tally them to create the spreadsheet at issue; it simply retrieved the

4

numbers and wrote them down." *Id.* at 6-7. PPLC asserts that the City does not seek information for the verification purposes contemplated by Rule 1006, but actually "seeks backdoor discovery into an issue it failed to pursue. . . ." *Id.* at 7. PPLC also maintains that the "the data reflected on the spreadsheet concerning the amount of throughput that arrives in Montreal serves as relevant evidence concerning the utilization of the entirety of Line 9." *Id.* at 8. PPLC also offers to withdraw the newer table:

> In order to reduce and simplify the pretrial disputes the parties and the Court must contend with, Plaintiffs withdraw as a proposed exhibit the additional report attached as Exhibit 1 to Defendants' Motion. Although Plaintiffs disagree with the City's argument concerning Exhibit 1, Plaintiffs agree to limit their presentation on this issue to the same type of information already presented and admitted by the Court previously.

*Id.* at 1 n.1.

### C. The City's Reply

The City disputes PPLC's claim that it never sought the flow data during discovery. *Defs.' Reply* at 2-3. The City reiterates that Rule 1006 applies because PPLC acknowledges that "a human employee or attorney" viewed "Receipt Reports" and copied down the average values to generate the two tables at issue. *Id.* at 3-4. The City maintains that "[a]t a minimum" it has "a right to inspect the underlying monthly 'Receipt Reports,' to verify that PPLC accurately 'retrieved the numbers and wrote them down' on the Summary Table." *Id.* at 4.

## III. DISCUSSION

When parties seek to prove the contents of a writing, the "best evidence rule" requires that parties introduce the original writing or a duplicate produced through

5

reliably accurate mechanical, chemical, or electronic means. FED. R. EVID. 1002-03. Federal Rule of Evidence 1006 provides an exception to this requirement that parties introduce the original writing:

> The proponent may use a summary, chart, or calculation to prove the content of voluminous writings, recordings, or photographs that cannot be conveniently examined in court. The proponent must make the originals or duplicates available for examination or copying, or both, by other parties at a reasonable time and place. And the court may order the proponent to produce them in court.

FED. R. EVID. 1006; *United States v. Milkiewicz*, 470 F.3d 390, 396 (1st Cir. 2006). The summary, chart, or calculation must be accurate, the underlying data "must" be made available to the opposing party and the trial court has "discretion" to order the production of the underlying documents. *Milkiewicz*, 470 F.3d at 396; *United States v. Appolon*, 695 F.3d 44, 61 (1st Cir. 2012).

Applying Rule 1006 to the Enbridge Line 9B flow tables, the Court concludes that PPLC must make the underlying records available to the City if it wishes to introduce the tables. The tables do summarize PPLC's more voluminous electronic records and the "average" values obviously represent a "calculation" from that larger collection of records, regardless of whether a person or a machine performed the summarizing calculation.

The parties and the Court previously framed related questions as involving the scope of discovery, but the First Circuit instructs that "Rule 1006 operates independently of the discovery rules, and the failure to request or obtain the documents during discovery does not negate a party's absolute right to subsequent production of material under Rule 1006, should that material become incorporated in

6

a chart, summary, or calculation." *Air Safety, Inc. v. Roman Catholic Archbishop of Boston*, 94 F.3d 1, 8 (1st Cir. 1996) (internal citations and quotations omitted). To the extent that the Court admitted the earlier table into evidence for purposes of determining justiciability, the Court is not bound by that decision and Rule 1006 controls. 31 CHARLES ALAN WRIGHT, ARTHUR M. MILLER & MARY KAY KANE, FEDERAL PRACTICE AND PROCEDURE § 8045 (1st ed. April 2018 update) ("If the proponent of summary evidence fails to make the source material reasonably available, the court should not admit the summary evidence or, if it already has been admitted, instruct the jury to disregard it"). While the Court agrees that the City appears to desire the underlying data for other purposes in addition to verification, there is no indication in the text of Rule 1006 or in the caselaw that additional relevance of the underlying data works to negate the "absolute right" that the Rule confers.

Some Courts recognize an exception to the disclosure requirement of Rule 1006 when the summary document was itself prepared in the regular course of business rather than prepared for litigation. *Id.* § 8043 (citing *U.S. v. Catabran*, 836 F.2d 453, 456-457 (9th Cir. 1988); *U.S. v. Draiman*, 784 F.2d 248, 256 n. 6 (7th Cir. 1986)). Even if the Court were to assume the validity of that exception, it would not cover this situation. According to PPLC's description of the flow tables' origins, they were prepared for litigation through a query process of the electronic database. *Pls.' Opp'n* at 6-7.

In summary, PPLC seeks to prove the flow volumes through Line 9B for certain periods of time using data it recorded contemporaneously in the ordinary course of

7

business. PPLC's tables summarize the underlying voluminous records using monthly average flow calculations. If PPLC wishes to introduce either table, Rule 1006 requires that it make the underlying data for those time periods available to the City, just as it did for one month's worth of data in August 2017.

## IV. CONCLUSION

The Court GRANTS Defendants' Motion *in Limine* to Exclude New Summary Tables Produced by Plaintiffs without Underlying Data (ECF No. 210).

SO ORDERED.

/s/ John A. Woodcock, Jr.
JOHN A. WOODCOCK, JR.
UNITED STATES DISTRICT JUDGE

Dated this 14th day of June, 2018